IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PING HENG QUI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 25-3131-JWL |
| | ) | |
| C. CARTER, Warden, FCI-Leavenworth; | ) | |
| PAMELA BONDI, Attorney General; | ) | |
| KRISTI NOEM, Secretary, | ) | |
| Department of Homeland Security; | ) | |
| SAMUEL OLSON, Field Office Director, | ) | |
| Immigration and Customs Enforcement, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Petitioner has filed a *pro se* petition for habeas corpus under 28 U.S.C. § 2241, in which he challenges his detention by immigration officials. For the reasons set forth below, the Court **grants** the petition. Respondents shall release petitioner from custody, subject to his previous Order of Supervision, by **October 6, 2025**, and shall provide notice to this Court when that release is effected.

Petitioner is a native and citizen of the People's Republic of China who entered the United States in 1997 as a nonimmigrant temporary visitor. After petitioner remained in the United States beyond the authorized period, he was ordered removed on December 18, 1998. In 2014, petitioner was taken into custody by immigration officials, but after efforts to remove him were unsuccessful, he was released from custody subject to an Order of

Supervision (OSUP).  By Notice dated January 16, 2025, petitioner's release was revoked, and he was again taken into custody by immigration officials on January 26, 2025. Petitioner is presently detained at FCI-Leavenworth within this judicial district.  On July 9, 2025, petitioner filed the instant habeas action, by which he challenges his detention and seeks his release.  Respondents filed an answer to the petition, petitioner filed a reply brief, and both sides submitted supplemental briefs as requested by the Court.  The matter is therefore ripe for ruling.

Petitioner argues that his continued detention by immigration authorities is improper.  To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2241(c)(3).  This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal.  *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

The Court initially rejects petitioner's argument under 8 U.S.C. § 1231(a)(1). Petitioner argues that, pursuant to that provision, petitioner may only be detained under his existing removal order when that order becomes final or may be executed after judicial review or upon petitioner's release from incarceration.  Petitioner has cited no authority, however, to support the position that an alien may only be detained in those enumerated instances.  In fact, the cited provision does not speak of detention, but merely provides that an alien shall be removed within a period of 90 days (the removal period), which period begins on the latest date of those three occurrences.  *See id.* § 1231(a)(1)(A)-(B).  It would be illogical to suggest that an alien who was previously released under an OSUP may never

2

be detained again for the purpose of removal. *See Tanha v. Warden*, 2025 WL 2062181, at *7-8 (D. Md. July 22, 2025). Moreover, the Court has previously rejected the argument that the Supreme Court's six-month presumptively-reasonable period of detention under *Zadvydas* does not restart upon detention of an alien previously released on an OSUP. *See Liu v. Carter*, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) (Lungstrum, J.) (citing authority).

The Court also rejects petitioner's claim that he is entitled to release because he did not receive a required notice of the revocation and did not receive a required interview. First, respondents have provided evidence that petitioner did receive notice of his revocation of his release, and petitioner has not disputed that evidence in his reply briefs. Second, petitioner has not shown how the lack of interview has prolonged his detention or caused him any particular prejudice. Through the litigation of his habeas petition, petitioner has had ample opportunity to state his position and make any arguments against his continued detention. *See Nguyen v. Noem*, No. 25-057, Order at 11-12 (N.D. Tex. Aug. 10, 2025). The Court is not persuaded that such non-compliance warrants release in this case.[1]

---

[1] In *Liu v. Carter*, 2025 WL 1696256 (D. Kan. June 17, 2025) (Lungstrum, J.), the Court relied in part on a violation of the interview requirement in 8 C.F.R. § 241.13(i)(3) in ordering the petitioner's release, but the Court noted specifically that respondents had not disputed that compliance with that regulation was required or that non-compliance would justify release. *See id.* at *2. In the present case, respondents have disputed that non-compliance with the interview requirement may warrant release. Although respondents argue that Section 241.13 does not apply here, they also appear to concede that another regulation that they argue governs here, Section 241.4, also requires an interview after revocation of release. *See* 8 C.F.R. § 341.4(*l*)(1)-(3). In addition, petitioner's Notice of Revocation of Release explicitly stated that he would promptly be afforded an interview.

The Court is persuaded, however, that immigration officials failed to comply with applicable regulations in deciding to revoke petitioner's release in the first place. Petitioner argues that officials did not revoke his release based on "changed circumstances" as required by 8 C.F.R. § 241.13(i)(2). That regulation allows for revocation of release as follows:

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in section (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

*See id.*

Respondents argue that this provision does not apply in this case because Section 241.13 as a whole does not apply here. Respondents contend that the revocation of petitioner's release was governed solely by Section 241.4, which authorizes revocation if appropriate to enforce a removal order, but which does not contain any requirement of "changed circumstances." Respondents point to the "scope" provision of Section 241.13(a), which states as follows:

> This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

*See id.* § 241.13(a). Respondents argue that Section 241.13 does not apply here because petitioner, after he was detained in January 2025, did not invoke the procedures laid out in

4

Section 24.13, whereby an alien may attempt to make a showing that there is no significant likelihood of removal in the reasonably foreseeable future (SLRRFF). Section 241.13(i), however, concerns revocation of release, which by definition occurs at the time of an alien's re-detention; thus, that paragraph's requirements cannot depend upon any procedures invoked by the alien *after* that re-detention. Section 241.13 also provides for release of an alien on an OSUP, *see id.* § 241.13(h), and Section 241.13(i) applies by its terms to the revocation of an alien's release granted pursuant to that section, *see id.* § 241.13(i). Respondents have not provided any information about the procedure under which petitioner's release was effected in 2014; but it may reasonably be assumed that the release was granted following a determination by officials of no SLRRFF – especially in light of the fact that the Notice of Revocation of Release for petitioner explicitly cited both Section 241.4 *and Section 241.13*. Thus the Notice itself contradicts respondents' present argument that the procedural requirements of Section 241.13 do not apply here. Accordingly, the Court concludes that officials' compliance with Section 241.13(i)(2), including its requirement of a determination based on changed circumstances, was required in this case. *See Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) ("ICE's decision to re-detain a non-citizen . . . who has been granted supervised release is governed by ICE's own regulations requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.") (citing 8 C.F.R. § 241.13(i)(2)).

Respondents also argue that any non-compliance with this requirement should be deemed harmless and that the remedy for a procedural violation should be substitute

process.  Any violation here, however, would have wrongly resulted in petitioner's detention and the revocation of his release, and respondents have not explained how such a violation could therefore be considered harmless.  Nor would it be appropriate merely to require substitute process, as respondents have had ample opportunity in this litigation to explain how officials determined that the revocation of release was justified by changed circumstances.

Thus, the Court turns to the question whether officials properly determined that there were changed circumstances that could have led them to conclude that there was a significant likelihood that petitioner would be removed in the reasonably foreseeable future, as required by Section 241.13(i)(2).  The Court agrees with the First Circuit that the determination of changed circumstances should not be made by the district court in the first instance; rather, this Court reviews whether officials properly made its own determination. *See Kong*, 62 F.4th at 620.  In this case, however, the Court finds that officials did not in fact make a determination that there is a SLRRFF for petitioner here based on any changed circumstances.

Notably, in their supplemental brief addressed to this claim, respondents have not actually identified which changed circumstances led to any such determination when petitioner's release was revoked on January 16, 2025.  Respondents note that the Notice stated that the revocation decision was "based on a review of [petitioner's] official alien file and a determination that there are changed circumstances in [his] case;" and that the Notice later stated that petitioner's "case is under current review by China for the issuance of a travel document."  Respondents argue based on that language that officials

6

substantially complied with the changed-circumstances requirement.  The statement that petitioner's case was under current review by China regarding a travel document is belied by respondents own evidence, however, as the submitted declaration from an immigration official, in describing the efforts to obtain a travel document for petitioner, begins with a travel document request dated February 27, 2025.

In addition, that declaration, after stating that China requires a travel document for removal without a valid passport, states as follows:

> On or about January 4, 2025, ERO [Enforcement and Removal Operations] began submitting requests for travel documents for Chinese citizens directly to the Embassy for the People's Republic of China in Washington, D.C. Previously, the procedure was to submit such requests to a Chinese Consulate, like the Chinese Consulate in Chicago, Illinois.  It is my understanding and belief that the change in submitting requests to the Chinese Embassy has resulted in ERO obtaining more travel documents for Chinese citizens.

The declarant has not provided any details or statistics or evidence to support that "understanding and belief" that that change has led to more success obtaining travel documents from China.  Regardless, neither declarant in her declaration nor respondents in their brief have identified this change as part of the changed circumstances that led to a SLRRFF determination and petitioner's revocation of release.  Moreover, the evidence indicates that the cited change did *not* lead to the determination to revoke petitioner's release, as officials' first request for a travel document for petitioner after the revocation was to the Chinese *Consulate*, with no request made to the Embassy until June 2025 (five months after revocation).  Thus, based on the evidence, the Court finds that officials did

7

not in fact make a no-SLRRFF determination regarding petitioner based on any changed circumstances that applied to him.

Nor have respondents argued that there have been changed circumstances warranting revocation since the time of the revocation. *See Nguyen*, Order at 24-25 (habeas relief is forward-looking; required change in circumstances may occur after the initial revocation). The Notice of Revocation effectively acknowledged that a travel document was still needed, but only two requests have been made to China for a document for petitioner, and it appears that neither request has elicited a response from China. No request has been made in the last three months. Respondents have cited no other reason to believe that removal is likely in the foreseeable future other than their declarant's statement, nearly two months ago, that efforts to obtain a travel document for petitioner would continue – and the Court is not persuaded, as set forth below, that there is a significant likelihood that such efforts will bear fruit in the reasonably foreseeable future.

Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same OSUP that governed his prior release).

The Court is also persuaded that petitioner's release is warranted under the Supreme Court's *Zadvydas* framework. The Court has described that framework as follows:

> While the government may detain an "inadmissible" or criminal alien beyond the statutory removal period, *see* 8 U.S.C. § 1231(a)(6), the government may not detain such an alien indefinitely. *Zadvydas* [*v. Davis*, 533 U.S. 678, 699 (2001)]. Instead, the detention of an alien subject to a final order of removal for up to six months is presumptively reasonable in

view of the time required to accomplish removal. *Id*. at 701. Beyond that period, if the alien shows that there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Furthermore, as the period of detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The six-month presumption does not mean that every alien must be released after that time, but rather an alien may be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

*See Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2 (D. Kan. Jan. 18, 2017) (Lungstrum, J.); *see also Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *3 (D. Kan. Nov. 21, 2024) (Lungstrum, J.) (quoting and applying this standard from *Anyimu*); *Madej v. Garland*, 2023 WL 1396195, at *1-3 (D. Kan. Jan. 31, 2023) (Lungstrum, J.) (same).

The Court concludes that petitioner has shown that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has now been detained without removal for a period of eight months, well beyond the six-month period deemed presumptively reasonable by the Supreme Court. Officials have not been able to obtain the necessary travel document from China, and it appears that they have not even received a response to their two requests for such a document. There has been no activity in the last three months since the more recent request. Respondents note that they were able to obtain a travel document for petitioner two times in 2014; but as petitioner notes, that fact also weighs against petitioner here, as the failure to obtain a document now suggests that circumstances are different this time around, and officials were unable to effect petitioner's removal in 2014 even *with* a travel document.

9

The Court further concludes that respondents have failed to rebut that showing. Respondents rely on the fact that they have made two requests for the necessary travel document.  In addition, as noted above, respondents' declarant has stated (although without supporting details or evidence) that, in her understanding, a change in requesting travel documents from the Chinese Embassy instead of from a Chinese Consulate has resulted in more success in obtaining those documents.  Any suggestion of diligence, however, is contradicted by fact that officials first requested a travel document for petitioner from the Consulate and did not send a request to the Embassy for five months.  Respondents also note that a travel document has been obtained for a different Chinese alien whose petition is before this Court; but respondents have not explained how the two petitioners' circumstances are so similar that the receipt of one document suggests that the other document is forthcoming.  Indeed, the fact that only one document has been received may just as reasonably suggest that a travel document for this petitioner is *not* forthcoming.

In sum, respondents have not been able to point to any specific fact that creates a significant likelihood of petitioner's removal in the reasonably foreseeable future in spite of the lack of movement in the last few months.  Petitioner's detention has become unreasonably indefinite, and the Court therefore concludes that petitioner must be released for this reason as well.

Accordingly, the Court grants the petition for habeas relief, and respondents are ordered to effect petitioner's release by **October 6, 2025**.

IT IS THEREFFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**. Respondents shall release petitioner from custody, subject to his previous Order of Supervision, by **October 6, 2025**, and shall provide notice to this Court when that release is effected.

IT IS SO ORDERED.

Dated this 26th day of September, 2025, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge